**Keith D. SCHACHT, Plaintiff–Appellant,**

v.

**WISCONSIN DEPARTMENT
OF CORRECTIONS, et al.,
Defendants–Appellees.**

No. 96–3633.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1997.

Decided June 17, 1997.

David E. Lasker (argued), Madison, WI, for Plaintiff–Appellant.

Richard Briles Moriarty (argued), Wisconsin Department of Justice, for Defendants–Appellees.

Before BAUER, CUDAHY and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The dispute in this case began when plaintiff Keith Schacht was discharged from his position as a correctional officer at the Oakhill Correctional Institution, located in Oregon, Wisconsin. Believing that the Wisconsin Department of Corrections (WDOC) and several officials at the correctional facility (acting in both their individual and official capacities) denied him his right to both substantive and procedural due process in the pre- and post-termination proceedings, Schacht filed suit in Dane County Circuit Court, alleging various violations of 42 U.S.C. § 1983. The defendants, relying on 28 U.S.C. § 1441(a), then removed the case to federal court, where the district court below dismissed the claims against the state defendants that were barred by sovereign immunity and granted summary judgment to the defendants on all remaining claims. Unfortunately, all of these efforts were for naught. Because the district court lacked subject matter jurisdiction over this case, we must vacate its judgment and instruct the district court to send all claims back to square one—Dane County Circuit Court.

**I**

On the morning of January 21, 1993, Keith Schacht had just completed his overnight shift at Oakhill and was headed for the exit door when he was stopped by defendant Captain Thomas Laliberte, who pulled Schacht aside and asked Schacht to empty his backpack. Schacht complied, and the ensuing search established that his backpack contained (among other things) two garbage bags, six pens, two pounds of government commodity butter, and a three-ounce tube of toothpaste. To the defendants, each of these items appeared similar to items used in the facility. Their presence in the backpack therefore confirmed the defendants' suspicions that Schacht had been stealing items from the prison. Schacht, however, maintained that the pens, butter, and toothpaste all belonged to him, and that it was a common practice, in which the prison man-

agement acquiesced, for Oakhill employees occasionally to take garbage bags for their personal use.

The upshot of all this for Schacht was a suspension without pay pending an investigation. The prison officials conducted a series of interviews and hearings, but Schacht believed the deck was stacked against him, as the hearings were conducted by Laliberte and Randall Hepp, both of whom Schacht believed were biased against him for being too much of a "by the book" officer. Ultimately, Schacht was formally discharged on February 18, 1993, and after aborted efforts at various grievance proceedings, Schacht filed suit in Wisconsin state court. In his complaint, which named the WDOC and a host of employees at Oakhill as defendants, Schacht asserted that he had been wrongfully discharged and deprived of his constitutionally protected liberty and property interests in continued employment, all in violation of the due process clause of the federal Constitution. The complaint asked for compensatory and punitive damages against all defendants, as well as costs, fees and any other relief the court deemed appropriate.

## II

At this point, all was well. Unbeknownst to both sides, however, the roof fell in when the defendants removed (without objection from Schacht) the case to federal court and the district court proceeded to resolve the case on the merits. The Achilles' heel of the case was the group of claims for monetary damages against the WDOC and the state officials in their official capacities, which were barred by sovereign immunity. The presence of these claims meant that the district court did not have original jurisdiction over the entire action, and thus that the defendants' removal under 28 U.S.C. § 1441 was improper.

We explained why this is so in *Frances J. v. Wright*, 19 F.3d 337 (7th Cir.1994), in which state defendants similarly tried to remove an action containing claims barred by state sovereign immunity as reflected in both the Eleventh Amendment and *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). We concluded that the district court

lacked jurisdiction over the case because sovereign immunity acted as a limit on the original subject matter jurisdiction of the courts with respect to the barred claims (rather than as a form of common law immunity). *Frances J.*, 19 F.3d at 340, citing *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396, 1400 (7th Cir.1993). The lack of jurisdiction over some claims in the case precluded removal of the action as a whole, because § 1441(a) confers removal jurisdiction only where the district court has the authority to adjudicate all of the claims in the case. *Frances J.*, 19 F.3d at 341. In so holding, we rejected the notion that the district court could cure this problem by simply dismissing or remanding the barred claims. Section 1441(c) contemplates certain cases in which separate and independent removable claims are joined with others that are not removable, but it gives the district court the choice of retaining the full case and "determining all issues" therein, or remanding all matters in which state law predominates. As we pointed out in *Frances J.*, this implies that the district court must have the power to determine all the issues in the case, either through original or supplemental jurisdiction. Claims barred by sovereign immunity stand on different footing than other claims that are not independently removable, because of the affirmative limitation on jurisdiction imposed by the sovereign immunity doctrines. See *Frances J.*, 19 F.3d at 340 n. 4. Under § 1441, "if even one claim in an action is jurisdictionally barred from federal court by a state's sovereign immunity, or does not otherwise fit within the original or supplemental (see 28 U.S.C. § 1367) jurisdiction of the federal courts, then, as a consequence of § 1441(a), the whole action cannot be removed to federal court." *Frances J.*, 19 F.3d at 341. See also *International College of Surgeons v. City of Chicago*, 91 F.3d 981, 987 (7th Cir.1996) ("removal is proper only if the action originally could have been brought in the district court"), cert. granted, ––– U.S. –––, 117 S.Ct. 1424, 137 L.Ed.2d 534 (1997); *Gorka by Gorka v. Sullivan*, 82 F.3d 772, 774–75 (7th Cir.1996) (following *Frances J.*); 28 U.S.C. § 1441(a) (discussing removability of actions, rather than claims).

In Schacht's case, it is evident that at the time of removal, the complaint included several claims that were barred by sovereign immunity. Schacht wanted monetary relief from the WDOC and from five Oakhill employees, whom he was suing in both their official and individual capacities. Since the State of Wisconsin would be the real party in interest with respect to the official capacity and WDOC claims, the district court could not adjudicate those claims without an authoritative waiver of the state's sovereign immunity. See *Frances J.*, 19 F.3d at 342, citing *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (noting that a lawsuit is against a sovereign if the judgment from successful claims would inevitably be paid from the public treasury). See also *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06, 110 S.Ct. 1868, 1872–73, 109 L.Ed.2d 264 (1990) (A state's waiver of sovereign immunity must be explicit and unambiguous). The defendants here and the district court below were undoubtedly aware of this problem, as it took no time for the district court to grant the defendants' motion to dismiss the claims against the WDOC and the Oakhill employees in their official capacities. As we noted above, however, the dismissal of the barred claims on the merits did not cure the initial defect in removal.

At oral argument, we raised the issue of jurisdiction and the propriety of removal sua sponte, and requested supplemental briefing from both sides on the relevance of *Frances J.* to this case. See *Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974) (subject matter jurisdiction can be addressed at any stage of a given legal proceeding). Schacht opted to concede the jurisdictional flaw, but the defendants contend that we may reach the merits of this case notwithstanding *Frances J.* because remand would be futile and would result in a waste of judicial resources. Specifically, the defendants contend that if we remand, the state court will simply dismiss the official capacity claims and the claims against the WDOC for failing to state a claim on which relief may be granted, or on grounds of sovereign immunity, and duplicate the analysis the district court devoted to the remaining claims. See *Lindas v. Cady*, 150 Wis.2d 421, 441 N.W.2d 705, 709 (1989) (noting that "states are not 'persons' within the meaning of § 1983"). See also *Arizonans for Official English v. Arizona*, —— U.S. ——, ——, 117 S.Ct. 1055, 1069, 137 L.Ed.2d 170 (1997) (noting that "sec.1983 actions do not lie against a State").

Even if the defendants have accurately forecast the fate of this case on remand, we are not free to disregard a jurisdictional defect. See *Arizonans*, —— U.S. at ——, 117 S.Ct. at 1071. Contrary to their suggestion, there is no "futility" exception to § 1447(c). The Supreme Court noted that the literal words of § 1447(c) leave no room for such an exception. See *Primate Protection League v. Tulane Educational Fund*, 500 U.S. 72, 89, 111 S.Ct. 1700, 1710, 114 L.Ed.2d 134 (1991). See also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") (Emphasis added). Furthermore, in *Smith v. Wisconsin Dept. of Agriculture*, we rejected an identical "futility" argument, instead holding that remand was required even if the state court would only respond by dismissing the remanded claims. 23 F.3d 1134, 1139 (7th Cir.1994). Although in some previous cases involving the removal of claims barred by sovereign immunity (of which Smith was one), we have remanded only the barred claims, while deciding the remaining claims on the merits, the jurisdictional issue was not called to the court's attention. See, for example, *Smith*, 23 F.3d at 1142–43. See also *Weinberger v. Wisconsin*, 906 F.Supp. 485, 491 (W.D.Wis.1995), judgment aff'd, 105 F.3d 1182 (7th Cir.1997). They do not, therefore, support the proposition that the *Frances J.* rule is limited in its application. Last, while the principles of judicial economy are not to be taken lightly, these principles cannot override constitutional or statutory limits on subject matter jurisdiction. We regret that the improper removal in this case will lead to yet additional litigation, but we remind both sides that much time and effort could have been saved had further consideration been given to the propriety of removal at the outset.

We therefore VACATE the judgment of the district court, and REMAND this case with instructions for the district court to remand the entire action to state court. Although Schacht requested costs and attorneys' fees in his supplemental brief, we agree with the state that his request was improperly presented and without merit in any event. Each side is to bear its own attorneys' fees and costs on appeal.